UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| BOBBY WADE, Plaintiff | CIVIL DOCKET NO. 1:19-CV-438-P |
| VERSUS | JUDGE DRELL |
| FRANCISCO J. QUINTANA, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Before the Court is a Complaint (Doc. 14) filed by *pro se* Plaintiff Bobby Wade ("Wade") (#94252-111) under <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>[1] and the Federal Tort Claims Act ("FTCA"). Wade is an inmate in the custody of the United States Bureau of Prisons ("BOP"), incarcerated at the United States Penitentiary – Allenwood in White Deer, Pennsylvania. Wade complains that he was denied adequate medical care while incarcerated at the United States Penitentiary in Pollock, Louisiana ("USP—Pollock").

Because Wade must provide additional documents to support his claim, IT IS ORDERED that Wade AMEND his Complaint (Doc. 14).

---

[1] In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. § 1983.

I.   Background

Wade alleges that he was assigned a top bunk bed while housed in the Special Housing Unit ("SHU") at the United States Penitentiary–Victorville ("USP-Victorville"). (Doc. 7, p. 11). Wade fell from while trying to climb into the bed on February 16, 2017. (Doc. 7, p. 11). Six days later, he was examined by a physician assistant, who took X-rays of Wade's knee. (Doc. 7, p. 12). Because the X-rays showed a potential tear of the ACL, the physician assistant submitted a request for an urgent consultation with an orthopedic specialist. (Doc. 9, p. 12).

On April 6, 2017, Wade was transferred from USP—Victorville to USP—Pollock. (Doc. 7, p. 14). Upon his arrival, medical staff performed an initial medical assessment and "verified and recorded" Wade's injury and the "need for follow-up medical care." (Doc. 7, p. 14).

Wade alleges that Physician Assistant Mitchell "deliberately altered, changed or otherwise manipulated Wade's medical records to reflect that his injury did not require 'urgent' but rather 'routine' medical care." (Doc. 7, p. 14).

Wade saw Defendant Mitchell again on April 14, 2017, and Mitchel scheduled an appointment for an orthopedic specialist to examine Wade and perform an MRI. (Doc. 7, p. 14). The orthopedic specialist agreed that a diagnostic MRI was medically indicated to determine the exact nature and extent of Wade's injury to his knee. (Doc. 7, p. 15). For the next six months, Wade waited for an MRI and filed "numerous

administrative grievances regarding the denial of medical care, including the excessive delay in him receiving the approved diagnostic MRI." (Doc. 7, p. 15).

Wade was "threatened with adverse action, including being placed in segregated housing, by Defendant Gotreaux, for having filed numerous administrative grievances" and for "potentially refusing to withdraw the grievances." (Doc. 7, p. 15). Wade alleges that, because he refused to withdraw the grievances, Defendant Gotreaux placed Wade in the SHU on "trumped-up" contentions and without a bottom-bunk pass. (Doc. 7, p. 16). Wade was found "not guilty" of the "trumped-up" charge. (Doc. 7, p. 17). While in the SHU, Wade's personal property was destroyed and stolen. (Doc. 7, p. 16).

Wade alleges that he informed Warden Johnson and Associate Warden Maldonado that his injury was worsening. (Doc. 7, p. 16). Wade also allegedly advised Assistant Health Services Administrator Derrick, Trip Coordinator Brown, Warden Johnson, Associate Warden Maldonado, Lt. Gotreaux, Lt. Moore, Dr. Garcia, and Physician Assistant Mitchell that he was being denied a bottom bunk, which was causing further injury to his left knee. (Doc. 7, p. 16). Wade informed Defendants that he was in severe pain and requested medical care. (Doc. 7, p 16).

While in the SHU, Wade also developed fever, chills, nausea, vomiting, and a rash. (Doc. 7, p. 18). An X-ray of Wade's stomach revealed a lesion. (Doc. 7, p. 17). /

In November 2017, Wade received the MRI of his knee, which indicated a horizontal tear of the ACL with a suggestion of a prior partial tear. (Doc. 7, p. 18).

Wade was then transferred to another prison. During the transfer, Wade was "handcuffed and shackled for twelve hours or more . . . which caused excruciating pain" and further injury to his knee. (Doc. 7, p. 18).

After his transfer out of USP—Pollock, Wade received one surgery and is waiting on another. (Doc. 7, p. 19).

Wade initially filed suit in the United States District Court for the Central District of California. The claims against the USP—Pollock Defendants were severed and transferred to this Court as a separate suit. (Doc. 9).

## II. Instructions to Amend

The FTCA contains its own exhaustion provision, which is jurisdictional.[1] Before filing suit under the FTCA, a plaintiff must fully exhaust all administrative remedies. See McNeil v. United States, 508 U.S. 106, 113 (1993); Price v. United States, 81 F.3d 520, 521 (5th Cir. 1996). Because this requirement is jurisdictional

---

[1] 28 U.S.C. §2676(a) provides in part: "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

in nature, the filing of a claim with the appropriate agency cannot be waived. See Gregory v. Mitchell, 634 F.2d 199, 204 (5th Cir. 1981).

In order to determine whether this Court has jurisdiction over Wade's FTCA claim, Wade must provide evidence of exhaustion under the FTCA. Wade must provide documents establishing that he provided a tort claim to the BOP with written notification of the injury and a monetary demand. He must also provide a copy of any responses received to the tort claim.

Additionally, in order to determine whether his <u>Bivens</u> claim is timely, Wade must provide copies of all administrative remedies filed with the BOP, separate from his tort claim.

### III. Conclusion

Because Wade must provide additional documents to support his claim, IT IS ORDERED that Wade AMEND his Complaint (Doc. 14) within 30 days of the filing of this Order to provide the information outlined above.

Failure to comply with this Order may result in dismissal of this action under Rule 41(b) or 16(f) of the Federal Rules of Civil Procedure. Petitioner is further required to notify the Court of any change in his address under Rule 41.3 of the Local Rules for the Western District of Louisiana.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this  25th  day of September 2019.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE